## Leonard H. Harland and Edward Harland v. Carney M. Staples, Addie E. Staples and F. Bussey.

1. CONTRACTS—*Consideration—Compromise of Doubtful Rights.*— The compromise of a doubtful right is a sufficient consideration for an agreement settling a litigated dispute.

Bill for Relief.—Trial in the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding. Bill dismissed for want of equity. Appeal by defendants. Heard in this court at the March term, 1898. Affirmed. Opinion filed November 16, 1898.

### STATEMENT OF THE CASE.

Leonard H. Harland and Edward Harland, appellants, being trustee and *cestui que trust*, respectively, filed their bill April 2, 1897, against Carney M. Staples, Addie E. Staples, his wife, and Edward T. Harland, by which they alleged in substance that the two Staples, to secure their debt of $1,500, delivered to Edward Harland their note of that amount, dated April 18, 1896, payable to his order three years after date, bearing interest at six per cent, payable semi-annually, and seven per cent after maturity, and to secure the note made their trust deed to Leonard H. Harland conveying certain real estate in Cook county (describing it).

The trust deed contained the usual provision that on default of payment of interest, etc., the principal could be declared due and a foreclosure had; also stated that it was subject to a certain other trust deed of even date for $2,000.

Harland v. Staples.

The bill alleges default in the first installment of interest; that the legal holder, Edward Harland, had elected to declare the principal due, and that there was due thereon $1,500 and interest from April 18, 1896, as well as solicitor's fees; that at the time the indebtedness was incurred, it was agreed between Edward Harland and Carney M. Staples that Staples should take up and satisfy the said $2,000 trust deed, so as to make the $1,500 trust deed to Harland a first lien on the property; that afterward, in consideration of the payment by Edward Harland to Staples of $550, it was agreed that Staples would convey said real estate to Edward T. Harland for the use of said Edward Harland, the conveyance to be taken in the name of Edward T. Harland, to prevent a merger of the legal title of the $1,500 trust deed, which was to remain in full force, unless Staples should pay off the $2,000 trust deed, which he agreed to do; that thereafter one Annabel, assuming to act as agent of Edward Harland, but without any authority, took a conveyance of said property from Staples and wife to Edward Harland, which conveyance contained a clause by which Edward Harland assumed and agreed to pay both said trust deeds; that Staples, instead of paying the $2,000 trust deed, as he had agreed, has allowed the same to be foreclosed and the property bid off, in the name of his wife, and the certificate of purchase issued to her without the payment of any money by her and without any consideration whatever; that Carney M. Staples was the real purchaser; that the property was bid off for his use and held in trust by his wife for him.

The bill prays that the assumption clause in the conveyance to Edward Harland be set aside and annulled; that the $1,500 trust deed be declared in full force and not merged; that the foreclosure of the $2,000 trust deed be declared void; that the purchase by Staples in his wife's name be declared to be in payment and satisfaction thereof; that an accounting be taken, and defendants be decreed to pay to Edward Harland whatever sum should be found due him, and in default of such payment that said real estate be sold to pay the same.

Staples and wife answered the bill, admitting the making of the two trust deeds, but denying the agreement set out in the bill that Staples was to satisfy the $2,000 trust deed, and that the $1,500 trust deed was to remain in force, unless he, Staples, should pay the $2,000 trust deed, and alleging that $550 was paid by Edward Harland to Staples in satisfaction of a judgment of $850 against Harland and as a compromise of certain matters in dispute between them. They deny they agreed to convey said real estate as alleged in the bill, to prevent a merger of the $1,500 trust deed, and allege that they, in consideration that Edward Harland would assume and pay off the $2,000 trust deed, conveyed the real estate subject to the two trust deeds, which Harland assumed and agreed to pay. They also allege that soon after the execution of the $2,000 note secured by the trust deed for that amount, one F. Bussey became the owner thereof, and default having been made in the payment of interest, a bill was filed in the Circuit Court of Cook County by Cannell, the trustee, for its foreclosure; that Edward Harland was made a party to the bill, which alleged that he had some interest in the real estate subsequent to complainants, which was a cloud on the title; that Harland answered the bill and also filed a cross-bill, and while the cause was pending his solicitors made an agreement with Bussey, the owner of the $2,000 note, through her solicitors, whereby Harland agreed to pay to Bussey on or before February 10, 1897, the amount of the $2,000 note, and Bussey agreed that on the payment being made she would release the trust deed and dismiss the bill, but if Harland deemed it necessary to vest the title in himself to complete the foreclosure, he could do so at his own expense, but should not have any right to a deficiency decree against Staples and wife; that the $2,000 note and trust deed were deposited in escrow with the Globe National Bank, with instructions to deliver to Harland when he made the payment, but Harland did not comply with the provisions of the agreement, and the note, trust deed and contract were returned to Bussey's solicitors; that Staples and wife made default, and the cause was referred

to a master, February 17, 1897, on the issues joined between the complainant and Harland, and he, by his solicitors, made another agreement with Bussey's solicitors, whereby Harland agreed to withdraw his answer and cross-bill; that his default should be entered, and he would release his trust deed for $1,500, and that a decree might be entered in favor of the complainant Cannell, trustee, for the amount due him, which was agreed to be $2,287, for principal, interest costs and solicitor's fees; that, February 20, 1897, default of Harland was entered and a decree for $2,287, providing for sale in default of payment; that on March 20, 1897, in compliance with the decree, the master sold the real estate and it was bid off by Addie E. Staples, the wife of said Carney, and a certificate issued to her, but they deny that Mrs. Staples holds the certificate in trust for her husband, and also that he was the real purchaser and that he paid whatever money was paid. They also allege that Annabel and Gilbert, Harland's solicitors, were authorized to receive and accept the deed to Harland; that Harland had due notice of the deed and its delivery, and was familiar with its contents, and afterward ratified the acts of his agent and attorney.

April 16, 1897, the Harlands amended their bill by adding thereto allegations to the effect that while the $1,500 trust deed was by its terms subject to the $2,000 trust deed, it was at that time agreed that Staples would take up and discharge the $2,000 trust deed, so as to make the other a first lien; that the $2,000 trust deed was made by Staples and wife to secure their note of $2,000, payable to their own order, which they pretended to indorse and transfer to Bussey, but that the transfer was a sham and pretense, and that Staples continued to hold the note to November, 1896, when, claiming to act for Bussey, he caused the bill to foreclose by Cannell, trustee, to be filed against himself and wife, because of default in payment of interest on the note which he held; that they, the Harlands, had lately discovered that the various agreements set forth in the answer had been made; that they were wholly ignorant of such agreements

until after the filing of the original bill, and did not in any manner authorize the same nor assent thereto; that pending the foreclosure proceedings by Cannell, Edward Harland authorized Annabel and his solicitors to negotiate with Staples and Bussey for an adjustment of the matters in controversy between Harland, Bussey and Staples, and to take from Staples and wife a conveyance of the real estate to Edward T. Harland, upon the condition that Annabel was to negotiate a loan on the property of $2,500 or $3,000, and not otherwise, the conveyance to be made and Edward Harland to pay to Staples $350 and to Bussey $2,000 in full satisfaction and discharge of the Cannell trust deed and of a void judgment of $850 obtained by Staples against Harland, the conveyance, trust deed and notes secured thereby, and a check of Harland for $350 to be put in escrow until the loan was secured, and not to be delivered until the loan was secured; that the acceptance of the conveyance to Edward T. Harland and delivery of the check for $350 were to be contingent upon the success of the loan, and that he, Harland, never consented to the delivery of the check or the acceptance of the conveyance to him; that on the failure of the loan, Staples, professing to act for himself and Bussey, repudiated the agreement and proceeded with the foreclosure suit, as set out in the answer; that in all the negotiations had with Staples by Harland through his agent and solicitor, it was assumed and believed by Harland that the transfer of the $2,000 note and trust deed was *bona fide*, and that Bussey was the real owner thereof, and complainants were not aware that the note and trust deed were wholly fictitious, until since the filing of the original bill.

Harland offers by the amended bill to reconvey the property to Staples and to relinquish all rights acquired by the unauthorized acts of Annabel and his solicitors, and also to perform whatever the court may adjudge to be equitable.

The answer of Staples and wife to the amended bill is the same in substance as their answer to the original bill, and in addition denies all the new allegations made by the amended bill. The answer of Bussey is that she has no

Harland v. Staples.

knowledge of very many of complainants' allegations, calls for strict proof of the same, denies there was any agreement between Harland and Staples that Staples should pay the $2,000 trust deed, denies that the transfer to her was a sham and pretense, and that Staples continued to hold the note and trust deed until November 18, 1896, and denies in substance all the new allegations made by the amended bill.

Replications were filed to the answers, and subsequently complainants further amended their bill by alleging that in order to induce their solicitors to enter into the stipulations and make said settlement, defendants falsely and fraudulently represented that Bussey was the owner of the $2,000 note and trust deed, and that believing and relying thereon said solicitors were induced to make the stipulations and settlement, and also added a prayer that the stipulations and compromise be declared fraudulent and void and set aside.

The cause was heard upon the foregoing pleadings and proofs taken in open court, and the court found by its decree the making of the two notes and trust deeds above described by Staples and wife; that Staples and wife, soon after the making of the $2,000 note, transferred it to Bussey in trust for Staples, by agreement of Edward Harland, for the purpose of preserving the same as a first lien on the real estate and preventing a merger of the trust deed in the title of said real estate, and in order to make the $1,500 trust deed a second lien thereon, that the proceedings were had and stipulations made in the foreclosure suit of the $2,000 trust deed, and judgment rendered against Harland in favor of Staples, substantially as alleged in the answers, but that Addie E. Staples purchased at the master's sale for her husband, and held the certificates of sale in trust for him; that two judgments were rendered against Staples for $500 each, which were liens on certain real estate conveyed by Staples to Harlan; that Harlan caused these two latter judgments to be satisfied by the payment of $200, and that this payment by Harland was an additional consideration for the agreements between Harland

and Staples set out in the answer; that the $1,500 note and trust deed was fully paid and satisfied as to Staples and wife, by the conveyance of the real estate by Staples and wife to Harland, pursuant to their stipulations and agreements; that the equities of the cause were in favor of defendants and against complainants, and dismissed the bill and amended bill at complainants' cost. From this decree the Harlands have appealed.

MONK & ELLIOTT, attorneys for appellants.

ALLEN & BLAKE, attorneys for appellees.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Appellants contend, first, that Staples was not in a position to set up the $2,000 or Cannell trust deed against the note and trust deed of $1,500 given by him to Edward Harland; and second, that the compromise agreement was voidable at the suit of appellant Edward Harland, because it was not authorized and it was obtained by false and fraudulent representations of Staples. It is argued under the first proposition, that there was error in allowing the oral evidence of Staples as to what occurred between him and Harland at the time of and before the making of the two trust deeds, for the reason that it tended to vary the trust deeds and that the pleadings were not sufficient to justify the evidence.

An examination of the evidence in this regard shows that it did not tend to vary, but rather to affirm, the trust deeds, and was therefore not objectionable for that reason.

We think the allegation in the bill that it was agreed that Staples should take up and discharge this $2,000 trust deed so as to make the $1,500 trust deed a first lien, was sufficient to make the evidence competent.

The remaining arguments under this proposition, to wit, that the evidence was not sufficient to overcome the trust deeds, and that Staples, by taking title to the $2,000 trust deed could not keep it alive and thereby defeat the $1,500 trust deed given to Edward Harland, it is unnecessary to

consider, in view of what has been said, and of the compromise agreement between them. Whether the compromise agreement set out in the answers was authorized by Edward Harland, and whether it was obtained by the false and fraudulent representations of Staples, presented questions of fact which, by the decree of the chancellor, after hearing the witnesses testify in open court, has been determined adversely to appellants. Edward Harland, among other things, testified that he authorized Gilbert, his solicitor, to negotiate with Bussey and Staples a settlement of the matter; that Gilbert's instructions were not in writing, and that he had no definite instructions; but does not state, nor is there any proof that either Staples, Bussey or their solicitors, knew anything as to the extent of Gilbert's or Annabel's authority. They could, therefore, assume that it was not limited. Harland, on cross-examination, said he could not remember that Gilbert told him what was in the stipulations, and admits that he had some whispers from Annabel about the time the stipulations were made, that he did not think that Bussey was a *bona fide* party in the case, but couldn't tell when he first heard it; also, that Gilbert probably told him about the time it occurred that his answers and cross-bill had been withdrawn. Gilbert testified that the stipulation for the withdrawal of Harland's answer and cross-bill, consenting to his default and a release of the $1,500 trust deed, and agreeing to the amount due Cannell, trustee, and decree in his favor, is O K'd by Harland, and while he, Gilbert, is not familiar with Harland's handwriting, he thinks it is Harland's handwriting; also, that he, Gilbert, believed that Harland knew of that stipulation; that Annabel acted for Harland, carried information to Harland, and would come back to him, Gilbert, with instructions on which he, Gilbert, acted; also, that Harland placed in witness' possession a check for $350, payable to Staples; also, that Annabel occupied the relation of confidential man, general agent—something of that sort; that the matter of the stipulation was talked over and fully understood as he progressed in the matter.

Harland, being recalled, said, first, that he did not sign the stipulation as testified by Gilbert, but added, "if I did, it was all conditional on the loan, every bit of it."

Staples testified, among other things, that Harland told him "a number of times that Annabel was his agent, and any dealings that I had with him was all right, and said, 'Go ahead and fix it with Annabel;'" also, that Harland told him that Gilbert and Annabel had full charge over the matter, and he would not deal except through them. Annabel and Gilbert together closed the transaction in which the deed to Harland was delivered and Harland's check of $350 was turned over to Staples. Annabel testified that he was to place a loan on the property to pay Staples $2,000, and that he talked to Harland about that at various times, thus showing that Harland knew the money was to go to Staples and not to Bussey; that he told Harland he, witness, would have to get around the difficulty of getting the loan in some manner, could not tell just how, on account of a judgment against Harlan & Hinchliff, thus showing, inferentially, that the agreement was made for the deed of the real estate to be to Edward Harland and not to Edward T. Harland, as claimed by complainants.

This evidence, with numerous other matters and circumstances testified to by the witnesses, which, to enumerate, would unduly extend this opinion, justified the court in finding and decreeing as it did with regard to the compromise agreement. At least, the finding is not manifestly against the weight of the evidence. Moreover, there were other matters in controversy between Staples and Harland besides the $2,000 trust deed, viz., the $1,500 trust deed, the judgment of $850 in favor of Staples against Harland, the two judgments of $500 each against Staples, which were liens on other property conveyed by Staples to Harland, as well as the conveyance of the real estate covered by the two trust deeds, which, in the original trade between Staples and Harland, by which Staples acquired the title, was estimated as of the value of $8,000. By the compromise agreement Harland got this real estate which he had

valued at $8,000, subject to the two trust deeds of $3,500, for the payment of $550, and also procured the release of the judgment against him, and of the two judgments against Staples, which were liens on Harland's property. That the judgments and the $1,500 trust deed were proper subjects of compromise between the parties, is not and can not be questioned, and as to the $2,000 trust deed, the fact that its validity in favor of Staples was questioned by Harland and in litigation between them, does not make it any the less a subject of compromise. If Staples believed it was superior to the $1,500 trust deed—and we think the evidence fairly tends to establish that fact—then it was a proper subject of compromise. 1 Chitty on Contracts, 46, note *m* (11th Am. Ed.); McKinley v. Watkins, 13 Ill. 140; Miller v. Hawker, 66 Ill. 185; Parker v. Enslow, 102 Ill. 278; Jackson v. Horton, 126 Ill. 576; Stoehlke v. Hahn, 158 Ill. 85.

In the Jackson case, *supra*, which was a foreclosure suit in which defendants set up in good faith an equitable claim to the land as superior to a trust deed, the court say : " It is unnecessary to discuss the question whether the claim to the seventy acres set up by the defendants in the foreclosure suit was valid or not. It may be, if that suit had gone to hearing, such claim would have been held to be invalid. It is sufficient to say that the parties relying upon it did so in good faith, believing that their equities were superior to the trust deed. Therefore the agreement for settlement had a sufficient consideration, in that it was the compromise of a doubtful right and put an end to a litigated dispute."

In the Stoelke case, *supra*, which was a bill against the members of a mutual insurance company to recover for a fire loss, the court, in commenting upon the claim of appellant to the effect that Hahn, the appellee, had not even an apparent claim against the company, stated that the law from Lord Hardwicke's time had been " that an agreement entered into upon a supposition of a right or of a doubtful right, though it afterward comes out that the right was on the other side, shall be binding, and the right shall not prevail

against the agreement of the parties," and said, " we are of opinion that if there was not a clear legal right on the part of Hahn to recover $1,300 (the full amount of his insurance), there was a doubtful right, which was a sufficient foundation for an agreement of compromise," and affirmed a decree in Hahn's favor, based upon the compromise of his claim against the company, on which, in the opinion of the writer, who tried the case below, there never could have been a recovery against the company on the original claim.   So in the case at bar, while it may be conceded that Harland would have prevailed in his defense of the foreclosure of the $2,000 trust deed, there is sufficient in the evidence to show that Staples in good faith believed that it was a superior lien, and therefore the compromise agreement was not invalid.

The decree is affirmed.